## Dederich v. Provident Savings Bank & Trust Company, Trustee.

(Decided November 16, 1926.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

Wills—Widow Held Not Entitled, Under Will, to Occupy Family Residence After Remarriage.—Widow held not entitled, under will, to occupy family residence after remarriage, though will ordered trustee to permit her and daughters to remain there as long as they occupied it as home, since will construed as whole shows intent that widow should receive no income after remarriage, except $2,000 annually, and provides that right of election to occupy house is given to wife, and "after her death or remarriage to her daughters."

MYERS & HOWARD, and C. A. J. WALKER, for appellant.

S. D. ROUSE for appellee.

Opinion of the Court by Judge Clay—Affirming.

Joseph C. Whitehouse, a wealthy resident of Kenton county, died in the month of August, 1921. At the time of his death he owned a handsome home on the Dixie highway near Erlanger. He was survived by his widow and two daughters, Betty, age 14, and Jean, age 7. His will, which was duly probated, contained many provisions

not material to this controversy. He appointed his brother, William H. Whitehouse, executor, and the Provident Savings Bank & Trust Company trustee. Clauses 6, 7 and 8 of the will are as follows:

"VI.

"I direct my executor to pay to my wife, Maude S. Whitehouse, eight hundred and thirty-three dollars and thirty-three cents a month from the date of my death until said executor turns over said estate to the general trustee of my estate hereafter named.

"VII.

"I give the furniture, furnishings, pictures and other articles, which are generally known as household effects, now in and upon my residence property, to my beloved wife, Maude S. Whitehouse. Should my wife remarry, leaving either or both of my daughters residing in said house, then my general trustee shall refurnish said house for the use of my daughter or daughters.

"VIII.

"I hereby devise absolutely to my wife, Maude S. Whitehouse, four vacant lots belonging to me on Catherine street in the city of Covington, Kentucky."

By clause 9 he devised his interest in the partnership business of Whitehouse Brothers, in Cincinnati, to his brother, with power to manage and control the business and pay the net profits to his general trustee. Clause 10 is as follows:

"X.

"I hereby devise all my estate of whatever kind and wheresoever situated excepting what has been disposed of by me in the preceding paragraphs hereof to the Provident Savings Bank & Trust Company of Cincinnati, Ohio, in trust for the following uses and purposes and upon the following terms and conditions, to-wit:

"A. My said trustee shall receive from my executor and the trustee of my interest in the business of Whitehouse Brothers all the assets of my estate and the profits, dividends and proceeds thereof, subject to the provisions for the management of my interest in the now existing business of Whitehouse

Brothers; it shall permit my residence property on Lexington pike to remain in the possession and control of my beloved wife, Maude S. Whitehouse, and my two daughters so long as my said wife or my said daughters or the survivor or survivors of them shall live there and occupy it as a home. My said trustee shall during the time that said residence property shall be so occupied keep up said property and shall pay all taxes, insurance and necessary and proper repairs to the house, outbuildings and fences thereon.

"B.   In the event that my said wife or after her death or remarriage my said daughters or the survivor of them shall not desire to live in said residence, my trustee shall sell the same for the best price obtainable and invest the proceeds from such sale in bonds of the United States government or in state, county or municipal bonds and shall pay the income or interest therefrom to my said wife and daughters, or the survivor or survivors of them, for the purpose of enabling them to live elsewhere, and they shall be at liberty to use so much of the income from said fund as they may desire for such purpose so long as they maintain a common home.

"C.   My said trustee shall sell all the remaining portion of my real estate as soon as practicable and any proceeds therefrom shall be reinvested in bonds of the United States government or in state, county or municipal bonds.

"D.   My trustee shall invest all my personal estate coming into its hands in bonds of the United States government or in state, county or municipal bonds and out of the income, interest or dividends from said investments it shall pay all the necessary taxes, insurance, repairs, charges and expenses against my said estate, including a reasonable and fair compensation to itself as fixed by the law of the state of Kentucky.

"My trustee shall pay to my wife eight thousand dollars a year for herself and one thousand dollars for each of my daughters in monthly installments for the maintenance of herself and my daughters, except as hereafter provided, until my younger daughter reaches the age of twenty-one.   From the date of my daughters respectively reaching the age of eighteen, each shall receive an additional one thou-

sand dollars a year until the younger shall reach the age of twenty-one.

"My trustee within its discretion shall have the authority to increase the aforesaid payment of ten thousand dollars to my wife for herself and my daughters, provided that no less than fifty per cent of the net surplus over said ten thousand dollars, received as income from my estate each year, shall be retained and invested for accumulation as principal, except that the additional one thousand dollars shall be paid to each of my daughters annually even though such payments may diminish the fifty per cent of the net surplus each year for reinvestment. I wish each of my daughters to use her annual allowance for the completion of her education, but this is not obligatory.

"E. When my younger daughter shall have arrived at the age of twenty-one years, my trustee shall then divide all the net dividends, interest and profits accruing annually from the principal of my estate into three equal parts, and shall pay one part to my wife, one to each daughter without regard to further accumulation thereof. Said payments shall be made in equal monthly installments and shall continue during the life or lives of my said wife and daughters excepting as hereafter provided.

"F. In the event that my said wife again marries after my decease, then she shall annually receive only two thousand dollars from my estate during the remainder of her life and the balance of said ten thousand dollars heretofore mentioned shall thereafter be paid up to the time when my younger daughter shall arrive at the age of twenty-one years to my brother, William H. Whitehouse, whom I hereby nominate and appoint to act as guardian for my said daughters in the event my wife should remarry. My brother shall expend the money in equal parts for the use and benefit of my two daughters until the younger shall become twenty-one years of age.

"G. Subject to the limitation respecting the remarriage of my wife, at her death or the death of either of my daughters without issue surviving, the survivor or survivors shall receive the income provided for the one or ones deceased.

"H. In the event that either or both of my said daughters should marry and die leaving issue to survive her or them then the portion of the income payable to the deceased daughter or daughters shall be payable to the issue of the deceased daughter or daughters or to their legal guardian or guardians for their use and benefit and upon the death of my wife and both of my daughters then the entire estate shall be divided among my heirs as by law provided."

After the death of the testator it was the custom of his widow and children to take an apartment in Covington during the winter and return to their country home in the summer. On March 8, 1924, his widow married Robert M. Dederich, and she and her children went to live with her husband at Fern Bank, Ohio, where they remained for a short time and then returned to Covington. On July 12, 1924, Mrs. Dederich, her husband and younger daughter took possession of the home on the Dixie highway. The elder daughter refused to accompany her mother and went to the residence of her uncle and guardian. The trustee brought this action to enjoin Mrs. Dederich and those claiming by or through her from occupying or attempting to occupy the home place. Mrs. Dederich filed an answer asking a construction of the will and containing the following allegations:

"She further states that she claims the right to continue said possession and remain in said property as mother and custodian of her two daughters, Elizabeth Whitehouse, age 17 years, and Jean Whitehouse, age 10 years, under the terms of paragraph A, section 10, of the last will and testament of Joseph C. Whitehouse, deceased; it being her desire as mother and custodian of her said daughters that they should live in the home provided for them by their father during their minority and for such further time as they may determine when they arrive at the age of majority.

"She further states that in addition to her desire and conviction that it is right and proper that her said daughters should live in and occupy as a home the property referred to in the petition, that the said daughters have again and again expressed the desire to live in the said residence and make it their home.

"As mother and custodian of her said daughters, and asserting her right to care for and supervise the education and maintenance of her said daughters until they arrive at the age of 21 years, she asserts and maintains the right to live with them, care for them, and supervise their education in the home provided for them by Joseph C. Whitehouse and this defendant in his lifetime."

Thereupon the facts were stipulated and the court entered a judgment enjoining Mrs. Dederich from occupying the residence, and from authorizing or directing her agents or representatives to go upon the property, and adjudging that she vacate the premises. Mrs. Dederich appeals.

The only question for consideration is the right of appellant to occupy the residence. Her counsel places particular emphasis on the following language of provision A of section 10:

"It (the trustee) shall permit my residence property on the Lexington pike to remain in the possession and control of my beloved wife, Maude S. Whitehouse, and my two daughters so long as my said wife or my said daughters or the survivor or survivors of them shall live there and occupy it as a home."

They then argue as follows: The above provision indicates a clear intention on the part of the testator to have his wife and daughters occupy the residence for the purpose of a home so long as they shall live there and occupy it for that purpose. It is an emphatic direction by the testator that the specific property shall be used and devoted to that purpose. It is not a matter that anyone else, including the trustee appointed by the will, could or can control. It places the right to occupy the property for the purpose of a home solely and alone in the judgment and discretion of his widow and children. A disposition of this positive character can not be controlled by subsequent ambiguous words, or by inference and argument from other parts of the will. Section B, which declares, "In the event that my said wife or after her death or remarriage my said daughters or the survivor of them should not desire to live in said residence, my trustee shall sell the same," etc., does not provide that in the event the wife should remarry any part of the proceeds

of the sale of the home should be taken from her and used for the daughters. On the contrary, after providing for the contingency of her remarriage, in the same sentence the will provides that if she should remarry and she and the daughters or the survivor of them should not desire to live in the residence, then the proceeds of the sale are to be invested and the income used for the purpose of enabling them to live elsewhere, so long as they maintain a common home. Either this is the proper construction of section B, or it should be held ambiguous and not sufficient to affect the positive disposition made by section A. Not only so, but it can not be that the testator ever intended, even in the case of the remarriage of his wife, that his children should be separated from the mother and required to maintain a separate home.

While appellant's contentions are ably pressed, we are constrained by a consideration of the whole will to reach a different conclusion. It is true that section A requires the trustee to permit the residence to remain in possession and control of the testator's wife and his two daughters so long as the wife or his daughters, or the survivor of them, shall live there and occupy it as a home, but this provision must be construed in connection with provision B, which qualifies the right of occupancy by the following language: "In the event that my said wife or after her death or remarriage my said daughters or the survivor of them should not desire to live in said residence, my trustee shall sell the same," etc. Thus the right of the trustee to sell arises only after there has been an abandonment of the home by those having the right of election. The right of election is not conferred on the wife and daughters jointly, but is given first to the wife and "after her death or remarriage to the daughters." In other words, the testator makes no distinction between the death and remarriage of his wife, but puts both events on the same basis. It can not be said that the right of occupancy given by section A is a continuous right if the daughters have the sole right to abandon the residence. Moreover, the continued right of occupancy on the part of the wife would place an insuperable obstacle in the way of an advantageous sale. Not only so, but the direction in the latter part of clause B, that the trustee should invest the proceeds of the sale of the residence and pay the income or interest therefrom "to my said wife and daughters or the survivor or survivors of

them for the purpose of enabling them to live elsewhere" can not be regarded as confirmatory of the wife's right of occupancy after her remarriage in view of section F¹ of the will providing, "In the event that my said wife again marries after my decease she shall annually receive *only* $2,000.00 from my estate during the remainder of her life," and declaring that the balance of $10,000.00 theretofore mentioned should thereafter be paid during the minority of the younger daughter to his brother, William H. Whitehouse, whom he nominated and appointed to act as guardian of his daughters in the event his wife should remarry, and further declaring that his brother should expend the money in equal parts for the use and benefit of his two daughters until the younger should become of age. These provisions leave no doubt that the testator intended that on the remarriage of his wife she should receive annually *only* $2,000.00, and no more income of any kind, either for her maintenance or the maintenance of the testator's daughters.

On the whole we conclude that appellant's right to occupy the residence ended with her subsequent marriage.

Judgment affirmed.