## Reuling et al. v. Reuling's Trustee et al.

(Decided May 10, 1935.)

SAMUEL B. KIRBY, Jr., for appellants.

DODD & DODD for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

This is an appeal from a judgment of the first chancery division of the Jefferson circuit court, denying to five testamentary devisees a termination and settlement of a trust created by will, in an action filed by them wherein they demanded distribution upon the ground that the purpose for which the trust was established no longer exists.

The trust involved in this action was created by the will of George Reuling, who owned at his death considerable lands in Jefferson county near Louisville. The will is dated September 10, 1894, the testator died May 12, 1909, and his will was probated on May 20th of that year.

## The Will.

There are seven items in this will. By item 1 the testator directs the payment of his debts; by item 2 he gives his wife a life estate; by item 4 he directs the way his estate is to be divided when time for division comes; and by item 7 he nominates the parties to execute it. The testator's wife died before he did. All of his estate has been sold and the proceeds distributed, except the proceeds of six acres, which is the subject-matter of this litigation, and the items of the will which affect the proceeds of this six acres we shall set out in full.

## Item 3.

"After the death of my wife, or after her marriage, I will and direct that my house and all outhouses and buildings belonging thereto, and all the household furniture, together with 6 acres of land, upon which said houses, outhouses and buildings thereon are situate and adjacent, being on what is known as Cannon's Lane, between the Workhouse Road and the Shelbyville Pike in Jefferson County, Kentucky, and a part of the land purchased by me of Edward Cannon, shall be set apart, used and occupied and enjoyed by those

of my children and my step-daughters, Lena Hiltz and Katie Elizabeth Hiltz, as a home so long as they, my said children and step-daughters shall remain unmarried.

"It is my desire and intention that the house, out houses and six acres of land upon which said houses may be situated and enough ground adjacent to the ground upon which said houses, etc., are situated to make six complete acres, shall be used and occupied by any and all of my children and my step-daughters who may not have married at the time of my wife's death or marriage until all of my children then unmarried and said Lena and Katie Elizabeth Hiltz shall have respectively married, died or declined to live at the place set apart as a home for them in this clause of my last will and testament. The right thus to occupy said houses and six acres of land surrounding the same shall cease with those of my children and step-daughters as they respectively marry and as any of my children or my step-children herein named shall marry, those so marrying shall immediately vacate the place set apart for them as a home for my unmarried children and step-children herein named; and those remaining single and unmarried shall occupy the same until they marry, die or decline to occupy the same as a home, and I earnestly request those of my unmarried children and step-daughters herein named who may occupy the land and improvements herein described to keep said land and improvements in good order and repair and promptly pay all taxes and other necessary outlays necessary to maintain same, and I further earnestly request and hope that those who may avail themselves of the benefits of this clause may live together in peace and harmony and so long as any one of my children or step-daughters herein named shall remain unmarried, such child or step-daughter shall have the right, without interruption to occupy said house etc. and six acres of land until married without being charged rent therefor; such occupant, however, to keep the place in repair, pay the taxes and necessary insurance."

### Item 5.

"After my children and step-daughters described and mentioned in the Third Clause of this my last will and testament shall marry, die or decline to occupy said six acres of land and the improvements mentioned in

said Third Clause as a home then I direct that said six acres of land and the improvements shall be sold by my Executors or the survivors and the proceeds divided between my children and step-daughters in the same way and in the same proportion as I directed the rest of my estate to be divded in the Fourth Clause of this my last will and testament.''

## Item 6.

''If, at any time, it should be the unanimous opinion of my executrix and my two executors that a sale of any or all of my personal, real or mixed estate will be beneficial to my estate, then my executrix and my two executors may sell any or all of my estate, real, personal or mixed, and their joint deed shall pass the absolute title to my estate sold by them jointly and no purchaser of any of my real or personal estate shall in any way be compelled to look to the proper application of the proceeds of such sale but in the event such sale is made as herein in this clause described, all the proceeds of such sale shall go to and be held in the same manner and divided in the same way and under the same restrictions and limitations as I directed my estate to be held and divided by this will. In case no sale of any of my estate is made under this or the right to sell had not been given in this clause, the six acres of land and the improvements mentioned as a home for my unmarried children and two step-daughters in this will, are included in the right given to my executors and executrix in this clause to sell if they unanimously agree that such sale shall be beneficial to my estate, nor is the right given in this clause to my executrix and two executors to sell if they are unanimous in their opinion that such sale shall be beneficial to my estate, to be construed as in any way interfering with the rights and directions given to my executors in the Fourth Clause of this my last will and testament after the death of my said wife or after her marriage.

''If the six acres of land and the improvements thereon mentioned as a home for my unmarried children and two step-daughters in this my last will, should be sold upon the unanimous judgment of my executrix and two executors as in this clause provided, then the proceeds of sale of said six acres and improvements etc. shall be used in providing a home to be used and held in the same manner and under like condition as

said six acres of land and improvements would be held if not sold as authorized in this clause.''

At the time of the testator's death, the four unmarried women living in this home were his stepdaughters, Katie Elizabeth Hiltz and Lena Hiltz, and testator's daughters, Caroline Reuling and Maggie Reuling, the last two being half-sisters of the first two. In September, 1909, Maggie Reuling married Charles Hansen and left this home.

### The Sale of the Six Acres.

On July 15, 1926, the Louisville Trust Company, which had become trustee of these six acres under this will, sold it at public sale under order of the court, and it brought $28,100. Some of this money the trustee expended for costs of making that sale. This property was sold on time and for what all agree is a good price, but, as a result of the serious business depression that ensued, all of that money had not been collected; hence no reinvestment of it has been made.

### The Occupancy of this Property.

After the marriage of Maggie Reuling, the other three unmarried women continued to live on these six acres until June, 1924, when Caroline Reuling was adjudged insane and sent to the asylum, where she since has remained and apparently must continue, for the evidence indicates her mental disorder is incurable. Of course, she was not thereafter an actual physical occupant of the home, but her failure to be so is not in contemplation of the law an abandonment of it by her, for she was not mentally capable of abandoning it, and the law regards her as continuing in its occupancy. When the property was sold, of course the other two were forced to vacate. Miss Katie Elizabeth Hiltz had some little money, and she bought a small house and lot, and she and her sister Lena Hiltz moved into it, and there they have since lived, but their vacation of this property was forced by the sale of it and was not a voluntary abandonment.

### What Are the Rights of These Three Women?

In order to determine the rights of these women, we must try as best we can to put ourselves in the position of the testator when he wrote this will and, as near as we can, view the situation as he saw it when

he wrote his will. This is the proper way to arrive at its meaning. Blessing et al. v. Johnston et al., 249 Ky. 777, 61 S. W. (2d) 635. See cases in 19 Kentucky Digest, p. 243, Wills sec. 441; 69 C. J. p. 63, sec. 1120; 28 R. C. L. p. 270, sec. 244. In construing this very will in Reuling's Ex'x v. Reuling, 137 Ky. 637, 126 S. W. 151, 153, we said:

"In every case the intention of the testator must be sought, and to arrive at his intention we must construe the language of the will in the light of the circumstances surrounding him at the time the will was prepared."

The trust considered there arose under item 4 of this will, and is not to be confused with the trust we are now considering.

The testator was a truck gardener, and many years ago he married a widow Hiltz, who was then engaged in a like business. Reuling had four children by a former marriage, his wife brought with her four children by a former marriage, and four children were born as a result of their union.

Reuling then owned these six acres and owed $1,800 upon it. He and his wife and these twelve children by hard work and economy paid off his debt and bought other property, some of which he sold and divided in his lifetime and some of which was sold and divided after his death.

What was his purpose in setting apart these six acres? It was not simply to put a roof over the heads of these women. It did not require six acres to keep it from raining on them. A small part of this property would have been enough for that. His purpose is plain. He was not only putting a roof above their heads, but was also providing a means for them to live. He expected them on these six acres to raise beans, radishes, potatoes, lettuce, corn, etc., just as he had done, and thus to get their living.

### Division of the Income.

After the sale of this property, the trustee, after paying expenses, taxes, etc., has been dividing the balance of the interest it has collected on the proceeds of the sale of these six acres among these women, paying the share of Caroline to her committee. That is right, and the trustee should so continue until in its judgment

a suitable investment can be found. Should one or more of them marry, such would lose her or their rights as the case may be, and the rights of the other or others would be increased, but the evidence indicates they are quite old, and the probability of such a happening is very remote. So long as the present status continues, the division of the corpus of this fund among testator's devisees must be deferred.

Judgment affirmed.