## Cotton v. Provident Sav. Bank & Trust Co. et al.

January 28, 1949.

Rehearing denied March 25, 1949.

Smith & Leary for appellant.

Chas. S. Adams for appellee, The Provident Savings Bank & Trust Co., as trustee.

Taft, Stettinius & Hollister for appellee. Elizabeth Whitehouse Hagin.

OPINION OF THE COURT BY CLAY, COMMISSIONER— Reversing.

The trustee of the Joseph C. Whitehouse estate brought this action for construction of his will and a determination of whether or not the residence property left by the testator and its furnishings should be sold. The Chancellor ordered a sale, and a daughter of the testator appeals.

Mr. Whitehouse died in 1921, owning a handsome home and grounds on the Dixie Highway near Covington. He was survived by a widow and two infant daughters, the latter at the time of his death being aged fourteen and seven, respectively. The testator left a very substantial estate. Most of it was bequeathed in trust, the income to be paid to his widow and daughters during their lifetime.

The present controversy turns upon the construction of three provisions in the will which relate to the residence property. Item X, Paragraph A directs that the trustee:

"shall permit my residence property on Lexington Pike to remain in the possession and control of my beloved wife, Maude S. Whitehouse, and my two daughters so long as my said wife or my said daughters or the survivor or survivors of them shall live there and occupy it as a home. My said trustee shall during the time that said residence property shall be so occupied keep up said property and shall pay all taxes, insurance and necessary and proper repairs to the house, outbuildings, and fences thereon."

Item VII provides:

"I give the furniture, furnishings, pictures and other articles, which are generally known as household effects, now in and upon my residence property, to my beloved wife, Maude S. Whitehouse. Should my wife remarry, leaving either or both of my daughters, residing in said house, then my general Trustee shall refurnish said house for the use of my daughter or daughters."

Item X, Paragraph B provides:

"In the event that my said wife or after her death or remarriage my said daughters or the survivor of them should not desire to live in said residence, my trustee shall sell the same for the best price obtainable and invest the proceeds from such sale in Bonds of the United States Government or in State, County or Municipal Bonds and shall pay the income or interest therefrom to my said wife and daughters, or the survivor or survivors of them for the purpose of enabling them to live elsewhere and they shall be at liberty to use so much of the income from said fund as they may desire for such purpose so long as they maintain a common home."

In 1924 the widow remarried, and she was subsequently enjoined from occupying the property by a judgment affirmed in this Court. Dederich v. Provident Savings Bank & Trust Co., Trustee, 216 Ky. 550, 288 S.W. 317. The residence remained vacant until 1932 when it was remodeled and refurnished. In that year the older daughter married and thereafter she, with her husband and younger sister, occupied it as a common home until 1942. In the meantime, in 1940, the younger sister married and has continued to live there with her family, which now consists of a husband and one child.

On December 19, 1942, the older daughter, with her husband and two children, removed from the premises and has not since occupied it. In 1945 she advised the trustee by letter that she had no intention of re-occupying the property as a common home and requested it be sold under the provisions of the will.

The younger daughter, who has since 1932 lived at the home (except for certain periods when she lived with an uncle), contends it may not be sold until she elects no longer to reside there. On the other hand, the older

daughter insists the trustee was required by the will to sell the property as soon as it ceased to be occupied jointly by both daughters as a common home. This latter view was taken by the Chancellor.

Since the widow remarried, she has no further interest in the property as a residence, and our consideration must be confined to the rights of the two daughters and the duties of the trustee. The problem before us is the ascertainment of the testator's intention as expressed by the will, in the light of the circumstances existing when it was written. Reuling et al. v. Reuling's Trustee et al., 260 Ky. 339, 85 S.W.2d 680.

The testator executed his will and died in 1921 when his daughters were infants. The provisions with respect to use and occupancy of the home indicate the testator envisioned his family as remaining together. He did contemplate that if his widow remarried she would perhaps wish to live elsewhere, and the residence was to be refurnished out of the trust funds for the use of his daughters. The present difficulty arises because the testator apparently did not anticipate that his daughters would grow up, marry, and wish to establish separate homes of their own.

Paragraph B of Item X shows a dominant intention on the part of the testator that ''a common home'' should be maintained for his family. He specifically directed that if the original residence was sold, the income from the proceeds could be used so long as such a common home was maintained. This latter provision in the will is somewhat in conflict with Paragraph E of Item X which directed the trustee to divide all the income of the estate equally among the wife and two daughters after the youngest daughter reached the age of twenty-one. However, this problem has not been raised by the parties, and it is not necessary to construe Paragraph E.

As before mentioned, the testator expressed a desire that a common home be maintained. The majority of the Court are of the opinion this is controlling, and the testator intended that there always be available for the use of the members of his family a residence, kept up by trust funds, which one or all might freely use.

Under Paragraph B of Item X, the trustee was to

sell the property only if the "daughters" (or the survivor) should not desire to live in the residence. It cannot be said the daughters do not desire to live there. Only one has expressed such an intention.

In Item VII the testator directed the trustee to refurnish the house upon the widow's remarriage if "either or both of my daughters" were residing in the house at that time. He thus had in mind the possibility that only one of his daughters should wish to live there. It is also plainly apparent from the will that, in the event of survivorship only one daughter would have the continuing right to occupy the home, at the expense of the trust estate, so long as she desired to do so.

Considering the entire will, and the fact that the testator left nothing absolutely to his daughters, but instead attempted to take care of their wants for their lifetimes, it is evident he intended to maintain a haven for those in his immediate family. Such refuge was to remain available as long as either daughter cared to avail herself of it.

The older daughter argues it is unfair to permit her sister to live in the residence partially at her expense when she receives no benefits therefrom. On the other hand, it seems likewise unfair that the single desire of the older daughter should be sufficient to oust the younger one from the family residence which the testator intended for his children's use. It might be noted here that the older daughter has as much right to occupy the residence property as her sister.

As so often happens when a testator attempts to control his property for many years after his death, without sufficient prophetic vision to take into account changing circumstances, an unfortunate situation has been created. The court may not, however, write a new provision into the will. Where the dominant intent of the testator is expressed by the language he used, we must respect his purpose however unwise we deem it. The will in this instance directs the maintenance of a home for his beneficiaries, and neither one of these is given the right to destroy that home acting independently of the other. Its sale, under the present circumstances is not authorized.

For the reasons stated, the judgment is reversed for the entry of proper orders consistent herewith.

Chief Justice Sims dissenting.

I am unable to agree with the majority of the Court and as this is a four to three decision it appears appropriate that the views of the minority should be expressed.

The will before us for construction was written more than a quarter of a century ago and there is nothing in it to show that the testator ever thought of the particular situation that now confronts this Court, or ever had any actual fixed purpose as to such a situation. It is therefore evident that the task of ascertaining the testator's intention from his will is not only difficult but one so delicate that should there be any doubt in the minds of the Court, we should not construe the paper so as to enrich one of his daughters at the expense of the other when the entire will strongly evidences an intention to have them share equally in his estate.

The will shows clearly the testator considered his two daughters jointly (except in the case of survivorship), and he never intended that one should receive greater benefits from his estate than the other. The only place in the will where he used the term "either or both" was in Item VII, which related to the time of remarriage of his widow and the refurnishing of the home. Both of these events have long since occurred. In addition, since the testator had in mind the possible survivorship of one daughter, the use of the term "either" may certainly be construed to anticipate the prior death of the other.

The other two sections of the will which have been quoted in the majority opinion refer to the daughters *jointly* except where one survives the other. Thus in Paragraph A, Item X, the testator directs the trustee to permit the use of the home:

"so long as * * * my said *daughters* * * * shall live there and occupy it as a home." (My italics.)

In Paragraph B of Item X, the testator states :

"In the event * * * my said *daughters* * * * should not decide to live in said residence, my trustee shall sell * * *." (My italics.)

Further along in the same paragraph the testator refers to "enabling *them* to live elsewhere," and ends with the words "maintain a *common home.*" The majority concluded that the trustee only had the power to sell, regardless of occupancy, when both daughters did not desire to live in the residence. This reasoning ignores the fact that the testator anticipated the joint use of the home by both daughters, that the "daughers" *are not* living there, and that a *common home* cannot exist without the consent of both parties.

Other parts of the will show clearly the testator intended both of his daughters to share the benefits of his estate in positive equality. Neither one is favored in any respect. Obviously, the testator did not foresee the present development, and did not in specific language provide for it. Yet it is manifest he intended his two daughters to share equally in the use and income of his estate, and joint use of the residence fits perfectly into this general objective. When that joint use terminated because of its undesirability, impracticability, or inconvenience, one of the testator's principal purposes could no longer be carried out. In such a situation his overall intention controls the construction of the provision expressly directing the trustee to sell the property. In this case it is not even necessary to extend the trust to fulfil more perfectly the intention of the testator, even though the equities of the case would perhaps justify it. See Zinsmeister's Trustee v. Long et al., 250 Ky. 50, 61 S.W.2d 887.

Considering the surrounding circumstances, and particularly the station in life of these parties, it appears no longer feasible for the two daughters to occupy the residence together. It is a three-bedroom house, and though apparently of substantial proportions, the two families, consisting of four adults and three children, could not conveniently use it as a single home. The majority opinion permitting this residence to be occupied by one daughter at the expense of the other not only violates the testator's clear intention to treat his two daughters alike and equal, but it puts a premium on the unreasonable tenacity of the younger daughter to remain in the home to the disadvantage of her older sister, when it becomes next to unbearable for both their families to occupy this three-bedroom residence.

Let us suppose each daughter had five children. Then the majority opinion decides that the older daughter must submit to the inconvenience, if not indignity, of fourteen people of wealth and refinement living in a three-bedroom home, or else forfeit a large sum because the younger daughter has the temerity to occupy the home in the circumstances and oust her more considerate and sensitive sister.

To my mind there is such a thing as reasonableness and fairness in construing a will in an attempt to ascertain the intent of the testator where the whole instrument evidences a purpose on his part to treat his two daughters equally and alike. Especially is this true where the will was written many years ago and a condition has arisen which the writer of the paper never contemplated.

The Chancellor, whose most excellent opinion shows a careful consideration of the case, properly determined the trustee should sell the residence. My thoughts coincide with his rather than with the majority opinion.

For the reasons given I most respectfully dissent. I am authorized to say that Judges Latimer and Knight join in this dissent.