HEUGHES et al. v. BOARD OF EDUCATION OF CITY OF ROCHESTER.

(Supreme Court, Appellate Division, Fourth Department. January 18, 1899.)

1. CONSPIRACY—VIOLATION OF CITY CHARTER—EVIDENCE.

In an action on a contract with a city board of education, plaintiffs' evidence showed a verbal arrangement between plaintiffs and a member whom they knew to be disqualified to contract under its charter, which expressly prohibited a member from being directly or indirectly interested in any contract, the consideration for which was to be paid by the board's authority. Under the contract, the member was to have the benefit of it, while they only bid to sublet to him. Plaintiffs had nothing to do with the work, and their only interest in it was $200, which the member agreed to allow them for the contract. *Held* sufficient to show that plaintiffs were parties to a conspiracy, the object of which was an unlawful act.

2. SAME.

It was also sufficient to justify proof of the member's acts and declarations, tending to show a conspiracy on the part of himself and plaintiffs to violate, by the contract, the charter prohibition.

Appeal from judgment on report of referee.

Action by Frederick K. Heughes and another against the board of education of the city of Rochester. From a judgment for defendant, plaintiffs appeal. Affirmed.

The plaintiffs bring this action to recover the amount alleged to be due them upon a contract entered into between them and the defendant for the construction and erection of a number of iron gates at the entrance of certain school buildings in the city of Rochester. The contract price of these gates was $1,920; but, as they failed in some important respects to fulfill the requirements of the specifications, the architect under whose supervision and

direction they were constructed refused to certify that they were worth more than $1,500; and the plaintiffs, by demanding judgment for that amount only, have apparently acquiesced in his decision. It is conceded that the gates were actually worth the amount allowed by the architect; that they were placed in the positions for which they were severally designed, where they have remained ever since; and that the defendant, at a meeting held on the 17th day of May, 1897, adopted a resolution directing the payment of the sum certified by the architect. But it further appears that, at a meeting held on the 1st day of June following, this resolution was reconsidered, and that the defendant has ever since declined to pay the amount certified, or any part thereof, upon the ground that the contract under which the gates were constructed and delivered was illegal and void. Upon the trial the defendant offered to return the gates to the plaintiffs, which offer was declined.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and McLENNAN, JJ.

James Breck Perkins, for appellants.
John F. Kinney, for respondent.

ADAMS, J. The plaintiffs, although nominally parties to the contract upon the provisions of which they rest their right of action, confessedly have but little, if any, interest therein; for it is one of the undisputed facts of the case that, immediately upon its execution, an agreement was entered into between the plaintiffs and one Jacob J. Young, by which the latter was to perform all the work and furnish all the materials required by the contract. In short, the contract was, in violation of its express provisions, virtually transferred to Young, who was at the time of the execution and transfer a member of the defendant board. The charter of the city of Rochester contains a provision which expressly prohibits a member of the board of education of that city from being appointed to any office of which the emoluments are paid from the city treasury, or from being "directly or indirectly interested in any contract, as principal, surety, or otherwise, or the furnishing of any materials or supplies for the city of Rochester, directly or by another person, the expense or consideration whereof are to be paid under any ordinance, resolution or order of the board of education" (Laws 1861, c. 143, § 126, as amended by Laws 1892, c. 190, § 9); and the payment of the plaintiffs' demand is resisted by the defendant solely upon the ground that the contract out of which it arises contravenes this provision of the city charter, in that it was entered into by the plaintiffs, not for their own benefit, but for that of Jacob J. Young, who, by reason of his relation to the board of education, was disqualified from taking the contract in his own name. The purpose of the prohibitory provision of the charter to which reference has just been made, which is simply declaratory of the common law and in harmony with a general statute of this state (Pen. Code, § 473), is manifestly for the protection of the public, and to relieve persons who occupy positions of public trust from any temptation to encourage by their official action the expenditure of public moneys in an extravagant, wasteful, and unnecessary manner, in order that some profit may thereby accrue to themselves as individuals. It is consequently a provision which is founded upon principles of public policy, and one which the courts should enforce with the greatest rigor, and without regard to the effect of its enforcement upon

individual suitors. Beebe v. Supervisors, 64 Hun, 377, 19 N. Y. Supp. 629; Smith v. City of Albany, 61 N. Y. 444; Woodworth v. Bennett, 43 N. Y. 273. The primary question, therefore, to be considered and determined upon this review, is: To what extent does the evidence contained in the record before us support the finding of the learned referee that the contract between the parties to this action was executed by the plaintiffs for the benefit of Young, and as the result of a conspiracy between themselves and Young, whereby the latter, by an evasion of the charter, might secure to himself by indirection certain profits and benefits which he was prohibited by that instrument from securing by direct means?

A "conspiracy" is defined to be a "combination of two or more persons to do something unlawful, either as a means or as an ultimate end" (6 Am. & Eng. Enc. Law, p. 833); and in this case, if there was in fact a conspiracy, it was obviously to accomplish an unlawful object, in such a manner as is by law declared to be a misdemeanor (Laws 1861, c. 143, § 126, as amended by Laws 1892, c. 190, § 9). Direct and positive proof of such an offense is, from the nature of things, seldom attainable; and for this reason resort is frequently had, in both civil and criminal actions, to circumstantial evidence,—that is, to evidence of disconnected acts on the part of the individual conspirators, which, when taken in connection with each other, tend to show a combination to secure a particular result; and this character of evidence is often quite as satisfactory and conclusive as more direct proof. People v. Flack, 125 N. Y. 324, 26 N. E. 267; People v. Van Tassel, 156 N. Y. 561, 51 N. E. 274. In the present case, as has already been suggested, it is admitted that an arrangement was entered into between the plaintiffs and Young whereby the latter was to have the benefit of the contract with the board of education. Obviously, the object sought to be accomplished by this agreement was an unlawful one; and, although this fact does not of itself necessarily establish a conspiracy, it is a circumstance to be considered, and one which may furnish a basis for the inference that the parties entertained a common purpose to violate and avoid the statute. People v. Flack, supra. Moreover, such an inference is warranted and strengthened by the further facts, which are likewise conceded, that the plaintiffs knew that Young was a member of the board of education; that he was thereby disqualified from entering into the contract himself; and that he had already encountered opposition from the executive board of the city in his attempt to obtain pay for certain bills which he had rendered against the city for labor performed and materials furnished while he was a member of such board. Then, again, it appears by the admissions of one of the plaintiffs while upon the witness stand that his firm had no intention, when they submitted their bid, of performing the contract themselves in the event of its being awarded to them, although their facilities therefor were ample. On the contrary, it was, as he said, their design from the outset to sublet the contract to some one; and, although this witness at first declared that he had no particular person in mind when the contract was executed, he subsequently testified that it was his intention to divide the work between Young and a man by the name of Kohlmetz, but that Young had very little work

to do, and consequently he let him have the whole of it. This same witness further testified that the agreement with Young was a verbal one; that the plaintiffs furnished none of the materials or labor called for by the contract; that they had no connection with the actual performance of the work; that the only time they expended on the contract was in preparing bids, and the only interest they had in it was $200 which Young was to allow them out of the contract price. Now, all these circumstances tend unmistakably to convict the plaintiffs, out of their own mouths, of complicity in the scheme which is relied upon as a defense to this action; and we are of the opinion that, without additional proof, they fully justify the inference that the plaintiffs were parties to a corrupt agreement, the object of which was an unlawful act. This being the case, the learned referee committed no error in admitting evidence of the various acts and declarations of the alleged conspirator, Young, which in any manner indicated that he and the plaintiffs were acting with a common purpose and design; for when a conspiracy is once established, even though it be merely by prima facie proof, the acts and declarations of each conspirator become competent as against his confederates. Kelly v. People, 55 N. Y. 565; People v. McKane, 143 N. Y. 455, 38 N. E. 950; People v. Van Tassel, supra. And, when we come to consider this case in the light of such additional proof of this character as the defendant was permitted to give, the inference drawn from the admissions of the plaintiffs gives place to certitude.

In justification of this assertion, it may be well to advert briefly to some of the confirmatory facts and circumstances which appear without substantial contradiction. Mr. Noyes, the superintendent of education, and the clerk of the board, testified that he never delivered the specifications for the work in question to either of the plaintiffs, but that Commissioner Young had access to them prior to the time the bids were submitted; that he made figures from them, and was the only person who did so to the knowledge of the witness. He further testified that the resolution of May 17th was drawn by him at the request of Young, who remarked at the time that he was hard pressed for money, "and that the boys had got to clear it up and go ahead." Mr. Oliver, the messenger of the board, testified that he delivered the specifications to Mr. Young on the 9th day of November, although Pfeiffer, one of the plaintiffs, had insisted that Young had no connection with the contract until a week after November 6th. Mr. Warner, the architect, states that he delivered all the plans and specifications to Young; and Mr. Nell, one of the commissioners, testified that he saw Young while he was engaged in making the gates, and informed him that he was acting illegally, to which Young replied that he did not think any one could stop him from making a living, and that he had got the contract through the plaintiffs, who were to make $100 out of it. The significance of this last-mentioned evidence becomes apparent when it is considered in connection with that of Mr. Mann, the city auditor, who informs us that when he refused to audit Young's bills against the city, because he (Young) was a member of the board of education, Young replied that he could avoid the prohibitory provision of the charter by furnishing the supplies and doing

the work in the name of some other contractor; and the substance of what occurred on this occasion, it is to be borne in mind, was brought to the notice of the plaintiffs before the present contract was entered into.

In addition to the circumstances above narrated, it appears that this same man, Young, has, by means of personal interviews with the individual members of the board of education, sought to influence official action in furtherance of his scheme; and last, but by no means least, in our summary of inculpatory evidence, is the fact that the plaintiffs failed to call Young as a witness in their own behalf, although it is perfectly obvious that he, of all other persons, could have met and answered the defendant's contention had it been without substantial foundation. But, without dwelling at greater length upon this feature of the case, it only remains to be said that the conclusion reached by the learned referee meets our approval, and that the evidence upon which he rests that conclusion is ample, in our opinion, to warrant this court in expressing its condemnation of the scheme disclosed by the record in this case, in language which will admit of no misinterpretation.

The learned counsel for the appellants calls attention to numerous exceptions taken to the admission of evidence of the acts and declarations of Mr. Young, and insists that they present error so prejudicial in its character as to require a reversal of the judgment appealed from. We think we have already answered this contention, and made it clear that, when this class of evidence was received, there was sufficient proof of the existence of a conspiracy to render it competent.

The judgment appealed from should be affirmed, with costs. All concur.