In re MORAN.

(Supreme Court, Appellate Division, Second Department.   June 29, 1911.)

1. MUNICIPAL CORPORATIONS (§ 231*)—OFFICERS—CONTRACTS—INVALIDITY.
    The trustees of a village may not contract with each other at the expense of the village, and any such contract is illegal at common law.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 657–664; Dec. Dig. § 231.*]

2. MUNICIPAL CORPORATIONS (§§ 231, 156*)—REMOVAL—GROUNDS.
    Where a firm of which a trustee of a village was a member sold supplies to the village, and bills therefor were audited by a committee of the board of trustees of which such trustee was a member, he violated the village charter, prohibiting any trustee from being interested, directly or indirectly, in any contract to which the village is a party, etc., and he could be removed under Public Officers Law (Consol. Laws 1909, c. 47) § 36, authorizing removal from office for misconduct, maladministration, malfeasance, or malversation in office.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 657–664, 346; Dec. Dig. §§ 231, 156.*]

Application of Michael Moran for the removal of John Curry Barlow as trustee of the Village of Ossining.   Respondent removed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

Henry C. Henderson, for the application.
Smith Lent, opposed.

BURR, J.   John Curry Barlow was elected a member of the board of trustees of the village of Ossining on the 10th day of March, 1909.   He qualified, entered upon the duties of his office, and has since acted as such trustee.   Between the date of his qualification and the date when these proceedings were instituted, the firm of which he is a member sold to the village various supplies, exceeding in value the sum of $200.   The bills for these supplies were audited by the finance committee of said board, of which committee Barlow was a member, and were subsequently paid.

The charter of the village of Ossining, which was in force when Barlow was elected, includes among the village officers "twelve trustees," whose term of office after March 2, 1908, was to be three years (Laws 1906, c. 242, §§ 4, 7).   Among other general powers and duties, these trustees were to "audit all bills and accounts and all claims for damages against the village" (Id. art. 3, § 34, subd. 16).   They were also given general management and control of the finances of the corporation (Id. art. 4, § 38).   Similar provisions were contained in the act to amend, revise, and consolidate the charter of the village of Ossining, which became a law June 25, 1910 (Laws 1910, c. 667, art. 2, §§ 10, 13; article 3, § 42, subd. 16; article 4, § 51).   The charter of 1906 also contained a provision to the effect that:

"Neither the president nor any member of the board of trustees shall be interested either directly or indirectly, in any contract to which the village is a party." Article 3, § 35.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

And a further provision that:

"An officer shall not be directly or indirectly interested in a contract which he or a board of which he is a member is authorized to make on behalf of the village; nor in furnishing work or materials." Id. § 160.

Provisions in identically the same language are contained in the charter of 1910 (article 3, § 43; article 10, § 202).

That the respondent has violated these express provisions of statute cannot be disputed. He alleges, however, by way of defense: First, that he did not know prior to the 1st of March, 1910, that it was illegal or improper for him to sell merchandise to the village; second, that for many years it has been the custom to purchase from members of the board of trustees supplies for the use of the various village departments; third, that the prices charged were only the reasonable market value of the goods sold and delivered; and, fourth, that when the propriety of his conduct was called in question, in March, 1910, he asked the Corporation Counsel of the village for an opinion as to his right to sell merchandise to the village, and was informed by him that such right existed. There was a sharp conflict of evidence as to the advice sought for and obtained from the Corporation Counsel; and, if the questions here involved turned upon the determination of that question of fact, we might be disposed to order a reference to examine the witnesses and report the testimony taken to us. But, conceding everything claimed by the respondent to be true, we deem it no answer to this application.

[1] The principle that trustees of a municipal corporation have no right to enter into contracts with each other at the expense of those for whom they are acting and whose interests they are bound to guard and protect is fundamental in the law relating to trustees. Such illegality does not depend upon statutory enactments; the contracts are illegal at common law. Beebe v. Supervisors, 64 Hun, 377, 19 N. Y. Supp. 629; Smith v. City of Albany, 61 N. Y. 444. In the Beebe Case the board of supervisors employed one of its members as an attorney to bring an action against the county treasurer. The services were performed and the attorney's bill submitted to the board, which audited the same. The plaintiff did not vote upon his own appointment nor upon the audit of his account; but, notwithstanding this, in a taxpayer's action to restrain the payment of his bill, an injunction was granted, upon the ground that it was contrary to good morals and public policy to permit municipal officers of any kind to enter into contractual relations with the municipality of which they are officers. In Smith v. City of Albany, supra, an action was brought to recover for the use of plaintiff's horses and carriages, which were hired for a celebration to be held on the 4th of July by a committee of the common council, of which body plaintiff was a member. The court held that the contract was void, and that plaintiff should not recover, and that such invalidity was entirely independent of any statutory provision, but was a well-established principle of law previous to the passage thereof.

[2] The public officers law (Laws 1909, c. 51 [Consol. Laws 1909, c. 47] § 36) provides that any village officer may be removed from

office "for any misconduct, maladministration, malfeasance or malversation in office." This proceeding is brought for the removal of said Barlow upon the ground that the acts above referred to constituted official misconduct.

The respondent urges that, although he may have been guilty of a technical violation of the law, he was innocent of any guilty purpose in connection therewith. When an official act or omission has occurred, the officer may be removed therefor without reference to the question whether it was done maliciously or corruptly. Throop on Public Officers, § 367. Even although respondent was not guilty of evil intent, the integrity of public official life, the propriety of removing the incumbents of public office from temptation and the appearance of evil, constrain us in this case to enforce the provisions of the statute. As has been said with regard to the rule of law intended to prevent public officers from being tempted to encourage by their official action the expenditure of public moneys in order that some profit may thereby accrue to themselves as individuals, it is a rule which "is founded upon principles of public policy and one which the court should enforce with the greatest rigor and without regard to the effect of its enforcement upon individual suitors." Heughes v. Board of Education, 37 App. Div. 180, 55 N. Y. Supp. 799.

The respondent should be removed from the office of trustee of the village of Ossining.

JENKS, P. J., and THOMAS and CARR, JJ., concur. HIRSCHBERG, J., not voting.