## Zinsmeister's Trustee v. Long et al.

(Decided June 20, 1933.)

PETER, LEE, TABB, KREIGER & HEYBURN for appellant.

H. H. NETTELROTH and WILLIAM D. BECKER for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

About two years before his death, Jacob Zinsmeister executed a trust agreement with the Fidelity & Columbia Trust Company whereby he placed with it certain securities and gave it broad powers with respect to holding and handling them. The following provisions of the trust are before the court for construction:

*"Distribution of Income:*

"The net income from the estate shall be paid to the Donor during his lifetime in convenient installments as he may direct, and, after his death, the net income from the estate shall be allowed to accumulate and become part of the principal of the estate, unless his daughter, Ella J. Long, should become a widow, or her husband, Dr. W. H. Long, should by age or disability become unable to follow his profession, in either of which events the Trustee shall pay her the net income of the then estate so long as she may live.

"After the death of his daughter and until each of his grandchildren, to-wit, William Frazier Long, Robert Jacob Long, and Margaret Lee Long (the children of said Ella J. Long) shall have reached the age of thirty (30) years, the Trustee shall pay to each of them their equal proportion of said net income. In case any of said grandchildren should die before reaching the age of thirty (30) years and leave issue surviving, such issue shall be paid the share of their parent in said net income. If no issue should survive the entire net income shall be paid the surviving grandchild or grandchildren in equal proportions.

*"Termination of the Trust:*

"When each of said grandchildren arrives at the age of thirty (30) years, the Trustee shall pay such grandchild his, or her, equal proportion of the estate then in its hands, freed of said trust. In case any of said grandchildren should die before receiving their share and leave issue surviving, such issue shall be paid the share of their parent. If no issue should survive, the share of such grandchild or grandchildren shall be retained by the Trustee and paid the surviving grandchild or grandchildren in equal proportions at the time each survivor arrives at the age of thirty (30) years.

"If no grandchild should survive then the estate shall be divided by the Trustee among the heirs of the Donor, according to the laws of descent and distribution then in force in the State of Kentucky."

Following the letter of the trust deed, the entire net income since the donor's death has been added to the principal. From February 21, 1929, to August 2, 1932, this accumulated income amounted to about $15,-000, so that the principal of the trust was then about $79,000. The first beneficiary, Mrs. Ella J. Long, filed her petition against the trustee, her three infant children, and her brothers and sisters, alleging that her husband's income and earning capacity, through no fault of his own, but because of changed conditions in his profession and the general economic situation, had diminished to about one-half of what it was when the trust was created. At that time it was ample for the care of his family, but is now insufficient to maintain them in the station of life in which they have moved, and it is particularly insufficient to educate the children. The elder son is about 19 years old. He has completed high school and attended college for a half year upon borrowed money, his parents finding it necessary to withdraw him because of a lack of funds. He has sought work, but has been unable to secure employment. He desires to continue his studies in preparation for the medical profession. The other son, about 18 years old, finished high school this year and will be unable to attend college for the same reason. The third child is a daughter now 12 years old. Neither the plaintiff or her husband nor any of the children have any source of livelihood except the earnings of the husband and father, and have no property other than this trust estate. The plaintiff sought to have the court adjudge that under the terms of the trust and the conditions disclosed she was entitled to have distributed the net income of the trust, which had accrued during the current year and which would thereafter be earned, for the benefit of herself and for the maintenance and education of her children. It was also asked that the court retain jurisdiction of the suit for the purpose of determining from time to time the distribution to be made by the trustee of the net income. The guardian ad litem of the children joined in the prayer of the petition. The trustee

denied only the legal conclusions. The other defendants, who may have some remote interest in the trust, merely entered appearances respectively.

It is to be noticed that the net income is required by the trust instrument to be added to the corpus, and that the right of the daughter, Mrs. Long, as first beneficiary after the death of the donor, to enjoy the income, is postponed until she might become a widow or until her husband "should by age or disability become unable to follow his profession." When either of those contingencies happen, then the net income shall be paid her. After her death the income is to be distributed equally among the three grandchildren named in the instrument until each becomes 30 years old. As each of them arrives at that age, the trust terminates as to his share. The contingencies of death of any or all of them before that time are regarded and the disposition of the trust is accordingly taken care of.

The first proposition here is whether the changed conditions in the financial life of the daughter, or rather of her husband, entitles her to receive now part or all of the current income. If a strict interpretation of the instrument be given, or its letter followed, no impairment in the earning capacity of her husband short of total disability to follow his profession would entitle her to any of the income. Further than this, under that strict interpretation no part of the income could be paid to her or her children should he abandon them and withhold all financial aid whatsoever. "It seems clear," as the chancellor wrote, "that such a strict construction would in no event be justified. The trust agreement shows on its face that the donor intended to provide for his daughter and her three children, whom he expressly named therein. The testimony shows that at the time of the creation of this trust estate and for many years prior thereto, plaintiff's husband was earning, and had been earning, income more than ample for the maintenance of his wife and children and the education of her two sons and a daughter. It is manifest that the donor had in mind the possibility that this income might cease even before his daughter should become a widow, and, therefore, he did provide that the net income of the trust estate should be paid to her in the event of Dr. Long's total incapacity to follow his profession. However, no express provision was made for any impair-

ment in Dr. Long's earning capacity short of total disability. This omission must be deemed to have been a mere oversight. It cannot be assumed that the donor intended that his daughter should be deprived of all income of the estate even though Dr. Long's ability to support his wife and children should have fallen so low as to deprive them of the absolute necessities of life."

In the court's endeavor to ascertain the donor's intention, it properly considered the fact disclosed in the record that this was one of six trusts created at the same time for the benefit of the donor's six children. He divided his estate equally among the trusts. In all of them he reserved the income to himself during his lifetime. At his death four of the trusts terminated and the principal was paid to the four beneficiaries. In the one created for his daughter, Mrs. Kuenzler, it was provided that she should have the income during her life and at her death it was to be payable to her husband and her son and was to cease when the son should become 30 years of age. The attitude of the donor toward all his children, thus manifested, fortifies the conclusion that he intended his children to have a livelihood and that the present exigency was one which the donor would have provided for if he could have foreseen it. We cannot believe the father intended the word "disability" to mean complete inability. His dominant idea was insufficiency of income of his daughter and not the physical condition of her husband. Therefore, for the court to direct the trustee to pay to the daughter annually out of the current income such sum as may be necessary for the proper support and maintenance of herself and children and for their education under the circumstances would be merely to carry out the intention of the creator of the trust that they should be provided for when their sole means of support has been depleted to the point shown. The primary intention of the father was that his daughter should have the income when she needed it.

This is not a case where the income was bestowed upon one for life and because of his necessitous circumstances or insufficiency of income he wants to encroach upon the corpus of the estate which had been given to another. It is a case of breaking in on an estate intended for the beneficiary. It affects the time of use rather than the quantum of the estate. In establishing

a trust, the trustor usually endeavors to provide for contingencies he can foresee as likely to occur. But human foresight often falls short and conditions arise not contemplated or anticipated. If the trust instrument can be construed as disclosing an intention to meet such exigencies when they arise, that intention should be recognized. If the creator's discernible purpose would be thwarted by a literal and strict interpretation but would be consummated by a liberal construction, as by accelerating the enjoyment or breaking in upon the trust to meet the situation, it is nothing but equity so to construe the instrument as to realize that purpose. The terms of a trust instrument must always be construed as authorizing all acts within the use contemplated to effectuate the object of the creator, and if necessary equity will extend the trust as created in order more perfectly to fulfill the intention of the donor. 39 Cyc. 201, 443.

The power of a court of equity to hasten the enjoyment of the trust fund when necessitous circumstances unforeseen by the creator have wrought such a change in the beneficiary's condition that it would be presumed he would have made provision therefor had he anticipated the situation presented is well recognized. Bennett v. Nashville Trust Co., 127 Tenn. 126, 153 S. W. 840, 46 L. R. A. (N. S.) 43, Ann. Cas. 1914A, 1045. That is but to construe the instrument to be what the donor manifestly intended and to carry out that intention. The law is thus well stated in 26 R. C. L. 1379, sec. 241:

"Where peculiar circumstances have arisen not expressly provided for by the trust instrument, and not anticipated by its author, the court in the emergency that has arisen has jurisdiction to sanction acts by the trustees which in ordinary circumstances they would have no power to do, and may hasten the enjoyment of trust funds in certain cases. It is not, however, the convenience or even the benefit of the beneficiaries which will move the court to hasten enjoyment of trust funds, but the necessity of varying the terms of the trust in order to give effect to the ultimate intention of its creator. And the court will so direct a use of such income in behalf of a beneficiary only where an exigency, nonexistent at the creation of the trust, has arisen, which exigency is one not then anticipated

57

by the testator; for if the testator saw or foresaw the plight of his beneficiary, and yet intended that his gift should be withheld until he matured in age, it would be beyond the power of the court to alter a purpose thus declared."

Other parts of that paragraph and sections 242 and 243 state conditions and qualifications under which the exercise of the power by the court may and may not be had. As stated in 39 A. L. R. 52, note:

"While the power of courts of equity to hasten enjoyment of a trust fund is most frequently exercised for the benefit of infants, it has also been exercised in other cases where the exigencies of the situation seemed to demand it."

See the complete annotations in that volume, page 40, under the title, "Power of Court to Hasten Enjoyment of Trust Fund by Decreeing Advances to Beneficiaries."

In this proceeding the first beneficiary, that is, the daughter of the donor, expressed a waiver of her present right to be paid any portion of the current income for her own individual use provided it could be used for the maintenance and education of her children. A construction of the trust deed under such waiver was asked. It would seem necessary to consider the trust estate in disregard of her rights and to deal with it as if it were solely for the benefit of the children and those who might ultimately take the estate at its termination.

It will be noted that the three children, who were grandchildren of the donor, are named, and no provision is made for any others, except upon a failure to reach 30 years of age. But they are to have the accruing income distributed after their mother's death. The chancellor, we think, properly construed the provisions of the trust agreement as giving to each of the three grandchildren equal vested estates in remainder, subject to the life interest of their mother, but that the remainder interest is subject to defeasance in the event of the death of the taker under the age of 30 years. The possibility of defeasance does not transform into a contingent remainder what would otherwise be a vested remainder. Mercantile Bank of New York v. Ballard's Assignee, 83 Ky. 481, 7 Ky. Law Rep. 478, 4 Am. St. Rep. 160; Carroll v. Carroll's Executor, 248 Ky. 386, 58 S. W. (2d) 670.

58

What has been said in respect to accelerating the payment of current income in behalf of the first beneficiary is, of course, applicable to the consideration of the grandchildren's interests. The peculiar guardianship over the personal and pecuniary rights of infants makes all the stronger the reasons for so construing a trust for their benefit. Sections 612 to 615 of Perry on Trusts consider the use of such trust funds for the maintenance and education of children. In the last section it is said:

"Upon these principles, courts will order maintenance for infants out of their income, where the father is unable to support them. This inability does not mean absolute poverty, but an inability to give the child an education suitable to his fortune and expectancy. The allowance will be made although the settlement contains no direction for maintenance, and although there is a direction to accumulate the income. * * *

"If the exigencies are very pressing, the court will increase the amount although there is a direction for accumulation, and the infant's interest is contingent."

In 26 R. C. L. 1379, it is written:

"A court of equity may make an allowance out of the income of a trust estate for the support of an infant cestui que trust although the instrument creating the trust contains no provision for maintenance and there is a direction that the income shall accumulate. Accordingly it is held that equity may direct the present payment to the beneficiary of the income of a fund placed in trust to accumulate until she reaches a specified age, if intellectual promise, the need of education, and necessitous circumstances, unforeseen by the testator, have wrought such a change in the beneficiary's condition that the creator of the trust would have so directed had he foreseen the situation. In making such allowances, the court will be controlled by the amount of the infant's estate, and the expenditure required for the maintenance of the infant in his station and condition of life."

In Knorr v. Millard, 52 Mich. 542, 18 N. W. 349, 350, a testator left a certain portion of his estate to

named children or their survivors to be placed at interest, divided equally among them when they severally became of age, but in the case of death of any of the children then to his surviving issue. It was held that the testator desired to have the fund accumulated for distribution at the times specified, but the court broke in upon the trust and hastened the enjoyment thereof, saying:

> "But, inasmuch as these bequests are not contingent, except as to time of payment, and as the chances of all the children are equal, the power has been recognized in the court of chancery, in its administration of trusts, to provide for making necessary advances out of the income when the infants are otherwise likely to suffer, even where by the terms of the trust itself an accumulation is contemplated."

This court does not appear to have hitherto had before it the precise questions presented on this appeal. We have, however, recognized the principle of varying the strict terms of a trust in order to give effect to the ultimate intention of its creator. Thus in Gillespie v. Winston's Trustee, 170 Ky. 667, 186 S. W. 517, 519, a testamentary trust for the benefit of the creator's wife and children provided that none of the business property should be sold. It was held that, where conditions arose which seemed to require a sale and reinvestment in order to protect the trust estate, it would be done, as it was apparent that the dominant intention of the testator was to keep the body of his estate continually invested in income producing property. It would be presumed, said the court, that he did not intend such restrictions as would prevent the trustee from exercising, with the consent of the court, good business judgment in handling the property, and that he did not contemplate that the objects of his bounty should by any construction of his will be limited to a small income when a much greater one could be had by changing the location of his investment. In respect to construing limitations upon the trustee in such matters, it is there said:

> "But in all cases in which the question arises, whether there is such a prohibition or not, as well as the extent of it, the decision must depend on the intention of the testator as expressed in his will,

and, unless the intention to prohibit is clearly found to exist, the prohibition will not be declared.''

See, also, Campbell v. Brannin & Co., 47 Ky. (8 B. Mon.) 478; Dockins v. Vass (Ky.) 124 S. W. 290; Rousseau v. Page's Executor, 150 Ky. 812, 150 S. W. 983.

The current net annual income from the estate was shown to be $4,247.27. It was adjudged that the trustee pay to the plaintiff Mrs. Ella J. Long $1,500 out of the income on account of money expended and obligations incurred by her for the children from the time the suit was instituted to the date of the judgment. It was further decreed that, under the conditions shown to exist by the record, the three children are entitled to have the income of the trust estate used for their support and education, and to that end the trustee was directed to set aside out of the income, until the further orders of the court, the sum of $1,200 for each of the two older children, and $600 for the youngest child, to be paid to their mother and applied by her to the purposes stated. Provisions and reservations were made in the judgment for the protection of the trust estate and further proceedings in respect thereto.

It seems to the court that this judgment was proper, and it is therefore affirmed.