### Eaker et al. v. Husbands.
### Husbands v. Eaker et al.

(Decided Nov. 29, 1935).

(As Modified on Denial of Rehearing March 27, 1936).

C. C. GRASSHAM for appellants.

CROSSLAND & CROSSLAND, W. A. BERRY and BRADY M. STEWART for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing in part and affirming in part.

This is an appeal from the judgment rendered in the above-consolidated actions, brought for certain alleged shortages of the executors, and in failing to administer and fully distribute the testamentary estate received according to the directions and provisions of the will.

The record discloses the following to be the facts out of which these actions arose: About the first of the year 1920, Gus G. Singleton died testate, a resident of McCracken county, Ky., leaving an estate appraised at nearly $50,000. In December, 1919, just prior to his death, he executed his last will, the provisions of which, so far as pertinent to the questions here involved, are:

"Clause 2. I will and bequeath to my wife's sister, Miss May King, the interest on Six Thousand Dollars ($6,000.00) of the United States Bonds now on deposit in the First National Bank of Paducah, Kentucky. The interest to be paid her semi-annually.

"Clause 3. I will and bequeath to my nephew, Harry Singleton's son, Gus Singleton, Five Thousand Dollars ($5,000.00) in United States Bonds, and they are to be held in trust by my executor until he becomes twenty-one (21) years of age. And the interest on the same is to be paid to his mother semi-annually for his benefit.

"Clause 10. I now desire at my death all of my notes, mortgages and real estate shall be disposed of as my executor thinks proper and best, and after paying out all same, the above bequests, the remainder is to be held in trust for my nephew, Harry Singleton, until he becomes 50 years of age. Then it is my desire whatsoever is left to be turned over to him to care for him in his old age, as I have already given him a home and cash amounting to about Five Thousand Dollars ($5,-000.00), I think I have dealt justly with him, and all those who are connected with me.

"Clause 13. I nominate and appoint my two (2) nephews, J. W. Eaker and Ed C. Eaker, and R. L. Reeves, executors of this my last will and testament, and request them to construe it liberally in order to carry out my wishes. Should any of my relatives become in need before the time set forth to pay the share allotted to them, they are instructed to use their judgment in making them such allowances as they think proper and right.

"Clause 1 of codicil. At the death of my wife's sister, May King, the Six Thousand Dollars ($6,000.00) given her during her life in bequest No. 2, the amount is to go to my nephew, Harry Singleton, as provided in the former bequest to him, and to be paid to him when he becomes fifty years of age. That is to say, the interest on the above Six Thousand Dollars ($6,-000.00), was to go to Miss May King during her life."

J. W. and Ed C. Eakers, nephews of the testator, were by the will nominated as the executors and fiduciaries to administer his estate and carry out its devises in trust as expressly declared and provided for by its clauses, quoted supra.

Upon the probation of the will in January, 1920, the named executors and fiduciaries at once qualified, took over the estate, and executed, with the appellee United States Fidelity & Guaranty Company as surety, their bond as executors. This bond contained, among its usual provisions and covenants, an additional one providing that said executors and their surety would "further well and truly pay and deliver all the legacies specified in said will, as far as the goods, chattels, credits and other effects will extend."

Appellant pleads and relies upon this provision of the bond as one of his asserted grounds of recovery against the surety bonding company for the defendant executor's alleged failure to "pay and deliver" the legacies devised by clauses 2 and 3 of the will.

It is to be observed that the testator has by these cited paragraphs of his will, supra, made two specific bequests of United States bonds; the one, in the sum of $5,000 he devised by clause 3 to Gus Singleton, Jr., (who was about five or six years of age at the time of testator's death); and the other to the amount of $6,000 by clause 2 and codicil 1 thereto, he bequeathed the accruing interest thereon to his sister-in-law, Miss May King, for life, when the bonds were to be given intact to his nephew Hugh Singleton, upon his reaching the age of 50.

By the last or fourth of the settlements of the executors made with the county court in January, 1932, and before the happening of the contingencies upon which these special bequests in trust of the bonds were to be paid over intact, as contended, to the named devisees, it is shown that the bonds had then been sold by the executors, and their sale proceeds paid out either as advancements to the devisee Gus Singleton, Jr., or else lost to the executors by reason of the failure of the bank in which they had placed on time deposit the sale proceeds of the other $6,500 of bonds, with the result that only an insufficient, if any material portion

of the testamentary estate was shown to then remain in the keeping of the executors, or fiduciaries, with which to satisfy and carry out the trust imposed by these trust provisions of the will.

Upon the showing made by the four settlements of the executors had with the county court (in 1922, 1925, 1929, and 1932, respectively), during the 12 year period of their management and administration of the estate, that the condition of the executors' accounts was such that they would be unable to later, upon the happening of the named contingencies, carry out the trust provisions of the will, by delivering intact the United States government bonds specifically bequeathed, or by making the semiannual interest payments therefrom, as directed, to the devisees, and also by the final settlement that they were chargeable, it was contended, with a shortage of more than $4,000 of estate funds received and remaining in their hands undistributed, they were, on February 8, 1932, upon motion of plaintiff, by order of the county court removed as executors of the estate after having been required to make, and having made, a final settlement of their fiduciary account with the court on January 29, 1932. By the court's order removing them, the plaintiff Husbands was appointed administrator de bonis non, with the will annexed of the Gus G. Singleton estate and the defendant executors directed to pay over to him, as such, all moneys, accounts, choses in action, and personal property, by them owing the estate, which had not been administered or distributed by them.

Further, the aforesaid Husbands was also appointed and duly qualified as guardians for the infant devisee, Gus Singleton.

Plaintiff having thus called upon the executors to turn over the unadministered property of the estate to him, and they having failed and refused to do so, even after having reported in their final settlement of January, 1932, that a balance of $4,034.88 of estate assets remained undistributed by them to the named devisees, he thereupon instituted these two suits (later ordered consolidated and heard and disposed of together) against the aforesaid executors and the United States Fidelity & Guaranty Company as surety upon their

fiduciary bond, in which he sought by the one suit, brought as guardian, to recover intact the $5,000 of United States bonds, or their value, devised the infant defendant, Gus Singleton, by clause 3 of the will, on the ground that same had been wrongfully sold and disposed of by the defendant executors in violation of the provisions of the will and of the statute, in selling them without an order of court so authorizing, forbidden by section 4707, Kentucky Statutes, and for which loss and alleged wasting thereof plaintiff further charged that their codefendant bondsman was also liable under the special covenant of its fiduciary bond, providing that the defendant executors would "well and truly pay all legacies specified in the will."

Also, at the same time, the said Husbands by a second action sued the same defendants as administrator de bonis non of the estate to recover of them various charged shortages alleged owing the estate in the amount of some $17,343.74 (when including therein the amount of $5,000 of United States bonds, separately sued for in his other suit brought by him as guardian against them).

The condition of the estate's finances being thus shown by the four settlements made by the executors with the county court to be uncertain and involved in confusion, an order of reference was made to the master commissioner to examine the settlements and accounts of the executors, taking proof, if necessary, to ascertain the true facts thereof, and to report: (1) The proper legal charges and credits which should have been made in each of the settlements, and the correct balance thereof; (2) the due dates of the bonds mentioned in the will, the interest they bore, and the authority under which their interest was paid and the bonds disposed of; (3) the form and condition of their bank deposits, general, special, or time, and amounts thereof; and (4) any other sums or amounts in their hands or to their credit.

Issues were joined upon the following pleadings and report made by the commissioner upon these matters of inquiry submitted him as follows: That he found a balance of estate assets, received and chargeable to the executors, over the amount disbursed by them, of

$4,226.88, and which remained owing and undistributed in their hands; (2) that the $5,000 United States bonds, which by clause 3 of the will were devised to the infant Gus Singleton, to be held in trust for and turned over, intact to him, when 21 years of age, had all been sold and the sale proceeds advanced to his mother upon her repeated requests made both for the "claimed" purpose of his schooling and support, and also for business ventures she desired to make, and, in addition thereto, had paid her a total interest amount of some $2,400 accruing on the bonds, as directed by the will. The commissioner further reported that the remaining $6,000 of 4 per cent. United States bonds of the estate, also specifically devised by clause 2 of the will had been sold (after, or soon before, their issue was called for retirement), and the sale proceeds "deposited on time" in the City National Bank of Paducah, and which were reported lost to the executors by reason of the bank's failure within the period of the time deposit. Nonetheless the report recommended that the executors should be credited by the amount of the loss as their investment of the bond fund in this time deposit certificate was found to have been made by the executors with such reasonable and customary care as a man of ordinary prudence would exercise in depositing his own funds in a going and reputable bank.

Further, the commissioner recommended that the infant devisee, Gus Singleton, should not lose the $5,-000 of bonds devised him in trust or be held liable for the illegal advances or disbursements of their sale proceeds made by the executors to his mother for him, except to the extent "it is shown that the infant has some of the property or money derived directly or indirectly from said disbursements" made her.

To this report both parties excepted, to the extent same was adverse to their respective contentions.

The court upon final submission, adjudged that plaintiff's exceptions be sustained to that part of the report allowing credit to the executors for the $6,500 bond proceeds invested in time deposit certificates of the City National Bank of Paducah, Ky., for the reason it held that the evidence shows that the sale of the United States bonds was made before maturity, and without right or authority, which constituted a conver-

sion, as claimed by exceptors, for no part of which they are entitled to credit. Also, plaintiff's further exceptions were sustained to the report to the extent credit was given by the commissioner to the defendants for $243.46, premiums adjudged on their fiduciary bond wrongfully paid out of the estate funds before the enactment of the Acts of 1926 (chapter 178), authorizing it.

Further, it was adjudged that defendants' exceptions to the report be confirmed to the extent (which it appears was intended) of the $2,400 by the commissioner awarded as covering the 10-year life expectancy of Miss May King, a devisee under clause 2 of the will, to an annuity of $240, interest upon the $6,000 United States bonds, and also sustained defendants' exceptions to the report in allowing plaintiff recovery of the $5,-000 United States bonds devised Gus L. Singleton, Jr., and, in accordance with such rulings upon plaintiff's exceptions, adjudged that plaintiff recover of the defendants, J. W. and Ed C. Eakers and the United States Fidelity & Guaranty Company, their surety, upon the ground of conversion, the sum of $6,500 representing proceeds of United States bonds of the trust estate wrongfully sold and lost when invested in time deposit certificates, with interest at 4 per cent. from June 8, 1931; and the $243.46 paid and charged the estate for premiums paid upon their fiduciary bond prior to 1926, with interest at 6 per cent. from February 3, 1932.

Further, it refused plaintiff's recovery of any part of the $4,226.88 sought as shortage in administering the estate or as alleged undistributed funds in the hands of the defendant executors, and further ordered the return of certain stocks and bank deposits to plaintiff, the propriety of which is not questioned.

By supplemental judgment it was ordered that Miss May King, the devisee under the second clause of the will, recover against the administrator, as same becomes due, the interest of 4 per cent. on the $6,000 worth of bonds devised to her during her life payable out of any funds of the estate, but refused to adjudge her a present recovery of interest of $2,400, representing the total amount thereof to accrue during the period of her 10-year life expectancy, as was recommended by the commissioner.

The plaintiff Husbands, as guardian, appeals, complaining that the chancellor erred in denying recovery of the specific $5,000 United States bonds, which he contends clause 3 of the will directed (and imposed upon them as their duty) the executors, as trustees, to retain throughout the period of the infant devisee's minority, to the end that they could be then delivered, as directed, intact to him. Further, he insists that the defendant bonding company, their surety, is also liable for defendants' failure to preserve intact and deliver over these bonds to the devisee upon his bcoming of age, under the express covenants of their fiduciary bond, as set out supra, that they would pay all legacies. Also, appellant Husbands further complains that the learned chancellor erred in failing to sustain the report of the commissioner finding the defendants chargeable with a shortage of $4,226.88, found by the commissioner to have been received and retained in the hands of the executors as undistributed funds of the estate.

On the other hand, the defendant executors and their bondsman challenge the propriety of the chancellor's judgment in charging them with a conversion of the $6,500, representing sale proceeds of the United States bonds which had been devised in trust by clause 2 of the will, and reinvested in interest-bearing time deposit certificates of the City National Bank and the investment lost to them, through its failure. Also, they urge, as error in the court's ruling, its charging to them the sum of $243.46, paid by the executors, out of estate funds, upon the annual premiums due upon their fiduciary bond, prior to the act of 1926, authorizing such charge of it to the estate.

In disposing of these several contentions, we will first look to guardian Husbands' vigorous insistence that he should recover the $5,000 United States bonds devised his ward, Gus Singleton, Jr., by clause 3 of the will, on the ground that the executors acted in bad faith, and were guilty of a flat violation of the terms of the trust imposed upon them by clause 3 of the will, by reason of their alleged wrongful payment and reckless advancement of the bond sale proceeds in addition to the annual interest accruing thereon to the ward's mother, which wasted and destroyed the entire corpus of the bond fund. In answer to this contention, it is first to

be noted that here the executors in their handling of this bond legacy, which the will directed that they should hold in trust until the infant devisee should become 21 years of age, were acting not as executors in its handling throughout this long 12-year period, but as trustees, which brought them within the rule applicable to such status, that if they acted within the reasonable meaning and scope of the terms of the powers given them as such, then neither they nor their bondsman were liable for the advancements made to the infant through his mother, so far as their conduct was proper, as authorized by will, even under the special covenant of their bond providing that the executors would truly pay and deliver all the legacies specified in the will. Allen et al. v. Kennedy et al., 8 S. W. 882, 10 Ky. Law Rep. 336. For ascertaining the trustor's intention, the conditions surrounding the execution of the trust instrument may be considered. Zinsmeister's Trustee v. Long et al., 250 Ky. 50, 61 S. W. (2d) 887. Here it is to be noted that the will under which this testamentary trust was declared was executed by the testator but a few days before his death, when the infant devisee was then only some five or six yars of age and when the conditions of his home and the thrift and business habits of his parents were well understood and known to the testator, as making probable the need of advancements by the trustees for the infant devisee's proper support and schooling, which circumstances and conditions may be considered in learning what was testator's intention when making clause 13 a part of his will. Thus viewing it as one made in anticipation of, and looking to, the probable early need of advancements from the trust fund for the welfare of his infant kinsman, to such end he intended and so directed that his nephews, nominated as the executors of his will, should construe its testamentary trusts liberally in order to carry out his wishes, and that if any of his relatives should become in need before the time set forth in the will to pay the shares allotted them, the executors were to use their judgment in making them such allowances as they might think proper.

Defendant executors claim that they were constantly beset with requests of the growing boy, Gus Singleton, and his mother for advancements, represented by

them as required for the boy's necessary schooling and support, and that they (acting under the authority given by clause 13 of the will, as well as upon the advice to such effect given them by the county judge) advanced to the mother, for the needs and support of the child, both the interest of some $2,400 directed paid for his support and all of the corpus of the bond legacy given him.

We are of the opinion, upon all the evidence and the report of the commissioner showing the conditions and circumstances under which these advancements were made, that they were made in good faith and in the belief, for the most part, that in making them they were carrying out the wish and intent of testator as expressed in clause 13 of the will. Therefore, it is our conclusion, and practically in conformity with the report of the commissioner, that to the extent the defendants made advances of the corpus of the bond estate to the mother, out of which the boy's needs and support were directly or indirectly supplied, they should be credited with the amount of the advancements thus made; but as to the other and further advancements made to the mother which clearly appear to have been for her individual and independent business ventures and for the satisfaction of her personal requirements, the same should not and cannot be considered as authorized payments made by the executors under clause 13 of the will for meeting the needs and necessities of the infant ward, and the amount of same should not be credited to the executors, but should be charged against them and their surety, and the plaintiff guardian directed to recover same. Bates v. Montgomery, 28 S. W. 784, 17 Ky. Law Rep. 49; Zinsmeister's Trustee v. Long, 250 Ky. 50, 61 S. W. (2d) 887; 39 A. L. R. 52, note; Bennett v. Nashville Trust Co., 127 Tenn. 126, 153 S. W. 840, 46 L. R. A. (N. S.) 43 Ann. Cas. 1914A, 1045. Here the testator realized in making his will that want and need might well become the plight of his infant devisee, and meant by clause 13 of his will to provide for it by authorizing advancements to be made from his gift to him therefor, rather than that it should be held intact until he became 21.

As to the next objection, that the court erred in refusing to award a recovery against the defendants

by the amount of their alleged shortage of $4,226.88, as representing funds of the estate received and undistributed by them, it is sufficient to say the question of any balance owing upon a proper accounting by the executors to the estate was one of fact, as to which a controversy existed between the parties and as to which there was ample evidence, it would seem, to support the finding of the chancellor to the effect that no balance was shown owing by the executors to the estate upon their reported settlement of it. In view of this, giving due deference to the finding of the chancellor upon this question of fact, we are not disposed to disturb it.

Further, Husbands, as administrator de bonis non, etc., complains that the court erred in failing to charge the executors with $243.46 paid as premiums by them upon their fiduciary bond prior to the enactment of the 1926 act authorizing it.

We deem this contention meritorious, and that the defendant executors were not entitled to the credit against the estate claimed by them for the premiums so paid out of the estate funds.

As to the defendants' final contention made upon cross-appeal, that the court erred in holding them liable for the amount of their time deposit of $6,500, representing sale proceeds of the United States bonds which had been reinvested by them in the interest-bearing certificates of the City National Bank and lost by reason of the said bank's failure:

In determining the question of the trustees' liability for the loss, we should consider the facts existing at the time of the trustees' selling of the United States bonds, in advance of their being called or their later maturity, and also determine whether or not the trustees exercised a reasonable care in reinvesting the sale proceeds of the bonds in the interest-bearing certificates of the City National Bank.

It is shown by the evidence that the trustees, when selling these United States bonds, first took counsel of their bankers, or the officers of the bank with whom they dealt, who were experts in the matter of bond investments. They informed them that there was at such time a premium of some $300 to be realized upon these United States bonds, which were of an issue callable

in 1932, or 1933, when, according to the government's custom, the bonds would be redeemed at par and become noninterest bearing. Therefore, considering the duties imposed upon them by the terms of the will, requiring annual interest payments out of the investments of the trust estate to certain named beneficiaries, it appeared to them to be both profitable and advisable that they should sell these bonds before the same were called, which would have been within a short time, when both interest and premium would be lost to the trust estate, and reinvest their sale proceeds in interest-bearing certificates of the City National Bank, generally believed to be a strong and solvent institution. Acting upon this information received, they state that they then disposed of the United States bonds and reinvested the proceeds in the supposedly safe securities of this local bank.

At such time, they state (and it is undisputed), the certificates of this banking institution were generally regarded by the well informed and business men of the community as being altogether reliable and safe for the investment of trust funds.

Under such circumstances, they contend that they should not be held liable for the loss of the trust fund, thus in good faith and in the exercise of both prudence and ordinary care invested in the securities of the bank, the later failure of which no one could predict or had cause to anticipate.

The well-settled and applicable rule to this situation is, as stated in 26 R. C. L. 1280:

"The duty of a trustee is to perform the trust he has undertaken according to the provisions of, and in the manner directed by, the deed of trust; and as a general rule the measure of care and diligence required of a trustee is such as would be pursued by a man of ordinary prudence and skill in the management of his own estate. A trustee is not an insurer. He is not absolutely bound for the result of his actions, except when he departs from the line of duty, or, keeping within that line, is wanting in diligence. He may not speculate in the property placed in his hands or acquire any interest adverse to the trust. But if he has exercised the proper care and diligence he is not responsible for mere error or mistake."

See, also, 65 C. J. 819, sec. 701, wherein such rule is also stated and Creed v. McAleer, 275 Mass. 353, 175 N. E. 761, 80 A. L. R. 1117.

To the same effect is this rule anounced in Re Fulton Trust Co. of New York, 257 N. Y. 132, 177 N. E. 397, 77 A. L. R. 499, that a trustee is bound to employ such diligence and such prudence in the care and management of the trust estate as, in general, prudent men of discretion and intelligence in such matters employ in their own like affairs and that, in determining whether the acts of a trustee have been prudent, within the rule that a trustee is bound to employ such diligence and prudence as men of discretion and intelligence employ in their own like affairs, the court must look at the facts as they existed at the time of their occurrence, not aided or enlightened by subsequent events (26 R. C. L. 1306), and trustees acting honestly, with ordinary prudence and within the limits of their trust, are not liable for mere errors of judgment.

Also, in Fox v. Harris, 141 Md. 495, 119 A. 256, 26 A. L. R. 806, it was held that:

"Testamentary trustees with power to invest in good, safe securities will not be charged for losses resulting from investing in securities recommended by responsible brokers, in which they also invest their own funds, where they act solely for the benefit of the trust, without compensation."

There is here no question of the good faith or the honesty of action of the trustees in making this change in the investment of the trust funds held by them. From this it follows that measuring their liability for the later loss suffered by them in the investment through the failure of the bank by the rules and principles announced, supra, there is left but one conclusion, and that is that the the trustees should not and must not be held liable therefor.

See further, as to the liability of executors and administrators, in which the rule as to their liability for failures of banks in which trust funds were deposited by them is set out, sections 158 and 159, 11 R. C. L.; also, 26 R. C. L. page 1379, sec. 241; In re Law's Estate, 144 Pa. 499, 22 A. 831, 14 L. R. A. 103.

Further, it is our conclusion that the provision of the judgment directing that Miss May King shall recover $240 annually against the appellant administrator during her life or the 4 per cent. annual interest on the $6,000 of United States bonds as devised her, and that it should be payable to her out of any funds of the estate in the hands of plaintiff, should not authorize his payment thereof to her out of any part of the funds coming into his hands by way of repayment to him by defendants of the amount adjudged to have been wrongfully advanced the mother of the infant devisee, out of the corpus of the $5,000 bond devise made him, as we conclude there should be no encroachment made upon it by any payments therefrom to another, but that it should be preserved as the trust fund devised Gus Singleton, Jr.

In view of these conclusions reached by us, it is our opinion that the judgment is further erroneous and should be reversed on the appeal to the extent it refuses a recovery of any part of the $5,000 United States bond trust fund and that a partial recovery thereof should be allowed to the extent the corpus of the trust was misapplied by advancements thereof made to the mother neither directly nor indirectly for the personal needs and support of the boy, but for the purpose of carrying out her individual business ventures or gratifying her personal needs and wishes, but no further; also the judgment is affirmed in ordering a surcharge of the defendants' settlement to the extent of its charge to the estate of bond premiums paid out of the estate before the enactment of the 1926 act authorizing it. Also, the judgment should be reversed upon the cross-appeal to the extent that it charges the defendants with conversion of the $6,500 invested by them in the time deposit certificates of the City National Bank.

The judgment is therefore, to the extent indicated, reversed in part, and affirmed in part, upon both the appeal and cross-appeal.