## Jenkins v. Keith et al.

Jan. 24, 1941.

L. O. Siler, J. B. Johnson, and Joe S. Feather for appellant.

Thomas F. Young and H. H. Owens for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

Appellant, George W. Jenkins, had been chief of police of the city of Corbin for eleven years prior to the institution of this action and Paris Salmons had been chief of the fire department of that city since 1935. By virtue of Kentucky Statutes, Section 3351a-3, these two men had served as members of the board of trustees of the pension fund of policemen and firemen all the years they had been the respective chief of police and chief of the fire department of the city. Jenkins served as secretary of the pension board and Salmons as its president.

The city of Corbin has a commission form of government and under Kentucky Statutes, Section 3351a-2, the commissioners may remove or demote firemen or policemen upon a hearing of written charges made against them for inefficiency, misconduct, insubordination or violation of the law or of the rules adopted by the commissioners. Subsection 3 of that statute creates the board of trustees of the police and firemen's pension fund composed of the mayor, the city treasurer, the fire chief and chief of police and allows the board to select from their number a president and secretary. Subsection 5 gives this board exclusive control and management of the pension fund, and Subsection 7 provides that the board of trustees may invest any part of the pension fund in interest-bearing bonds of the United States or State of Kentucky, or any county or city of the first, second or third class in the State of Kentucky, or "in any securities in which trustees or guardians are permitted to invest trust or guardianship funds under the laws of this state." Subsection 16 designates that all money paid from the pension fund shall be paid by the treasurer only upon warrants signed by the president and countersigned by the secretary of the board.

Members of the fire and police departments of Corbin on June 18, 1940, filed with the mayor and board of commissioners of the city written charges against Jenkins as chief of police and against Salmons as chief of the fire department alleging that on November 16, 1935, Salmons was issued a warrant for $175 on the policemen's and firemen's pension fund; on January 30, 1936, he was issued another warrant on this fund for $60; both of which warrants were signed by Salmons and Jenkins as the respective president and secretary of the

pension fund board and there were no minutes of the board authorizing the issuing of these warrants. The charges further allege that on April 21, 1936, Salmons and Jenkins, as officials of the pension fund board, issued a warrant payable to Salmons for $1,200 representing a loan made Salmons by the board on certain property he had recently purchased in the city of Corbin without Salmons executing a mortgage on the property to secure the loan. The further charge was made against these two officials that a short time prior to April 1, 1936, they entered into a conspiracy to unlawfully secure for themselves practically all the money in this pension fund and that they had succeeding in obtaining more than 75% thereof; that $1,500 was loaned to C. F. Hightower, a son-in-law of Jenkins, to be repaid at $20 per month without a precipitating clause being inserted in the mortgage and without a covenant therein that the mortgagor would keep the property insured. Other irregularities were charged which are unnecessary to either mention or discuss.

A special demurrer was filed by Jenkins and Salmons challenging the right of the board of commissioners to try the charges against them and alleging that power was vested in the board of pension trustees. The special demurrer was properly overruled as the statute plainly authorizes the commissioners to hear the charges. By agreement of parties the allegations in the charges filed were controverted of record. The trial before the city commissioners resulted in Jenkins and Salmons being found guilty. Jenkins was demoted from chief of the police department to the office of patrolman and Salmons was reduced from chief of the fire department to the rank of fireman. An appeal was prosecuted to the circuit court where a trial was had before the court with the same result reached in the trial before the city commissioners, and Jenkins appeals from the judgment entered in the circuit court.

But little space will be devoted to the $175 and $60 loans Salmons obtained from the pension board. Oakes, the city treasurer, testified there were no minutes of the board authorizing these two loans, but Jenkins testified that the proceedings of the board were kept in a loose-leaf book and many of its minutes were lost, among which were those authorizing these two loans. When we come to consider the $1,200 warrant signed by Sal-

mons and Jenkins on April 21, 1936, we find these officials did not comply with the minutes of the pension fund board providing the loan was to be secured by a first mortgage lien. A warrant for this $1,200 was issued on April 22, 1936, but no mortgage was executed by Salmons until June 9, 1936. This mortgage did not secure the $1,200 loan by a first lien on the property, but it was subject to a purchase-money lien of $600 to say nothing of some unpaid back taxes. The property had cost Salmons $1,800, of which he paid $1,200 cash and the seller retained a lien for the remaining $600 of the purchase money. Thus the board of pension trustees had loaned Salmons, its president, every cent he paid on the purchase of the property through the dereliction of Jenkins, its secretary, in failing to carry out the board's written instructions (in the form of minutes) and obtain a first mortgage lien on the property. When the property was sold to foreclose the $600 purchase-money lien it was bought in by Salmons, and the board to protect its debt paid the sale bond and took a mortgage on the property from Salmons for $1,486.78, covering his entire indebtedness to it. Salmons was given five years within which to pay this mortgage at the rate of $30 per month. The fact that this property was finally sold for $2,500 and that the pension fund got back its debt and interest does not excuse Jenkins from dereliction of duty in the manner in which he allowed Salmons to obtain $1,200 from this fund over his signature. The loss confronting the board by reason of the misconduct of its secretary was prevented only by the vigorous action of the board. Jenkins either connived with Salmons in this transaction or else he was an incompetent secretary of the board.

The same minutes of the pension fund board authorizing the loan to Salmons also authorized a loan of $1,500 to C. F. Hightower, a son-in-law of Jenkins. Hightower executed a mortgage to secure this loan, but it was payable over a long number of years at $20 per month and there was no precipitating clause in the mortgage. Again the Hightower mortgage did not require him to keep the property insured. The record shows that Hightower paid practically nothing on this mortgage from 1937 until after these proceedings were instituted against his father-in-law. On September 11, 1940, Hightower satisfied the mortgage against his prop-

erty, which on that date amounted to $1,467.80. The proof shows that Jenkins approved a loan of $1,500 on property which had cost his son-in-law, Hightower, $1,600. Ed Shotwell testified this property was worth $2,500 and W. T. Tipton testified it was worth about $1,800, but the fact that Hightower had paid only $1,600 for it did not justify a $1,500 loan thereon to be repaid at $20 per month with no precipitating clause in the mortgage and with no covenant requiring the mortgagor to protect the property by a fire insurance policy.

From the way Jenkins handled the $1,200 loan to Salmons and the $1,500 loan to his son-in-law, it would seem he and Salmons had arranged to use this pension fund for the benefit of Salmons and of Jenkins' son-in-law, as shortly after these two loans were made there remained in the treasury only $482.18. Apparently no effort was made to comply with Section 3351a-7, Kentucky Statutes, concerning the investment of these funds. That section recites that the funds may be invested in any securities in which trustees or guardians are permitted to invest trust or guardianship funds. Section 4706 of our Statutes has designated as proper investments for trust funds government bonds and certain bonds of this commonwealth and "other interest bearing or dividend paying securities which would be regarded by prudent business men as safe investments." It it obvious that no prudent business man would lend $1,200 on property purchased for $1,800 which had a first lien thereon of $600, not to mention unpaid back taxes. Nor would such a business man have loaned $1,500 on property recently purchased for $1,600 with the loan payable $20 per month over a long period without a precipitating clause and no insurance protection. United States Fidelity & Guaranty Co. v. Drinkard, 250 Ky. 695, 63 S. W. (2d) 916; Hines, etc., v. Brown's Committee, 261 Ky. 630, 88 S. W. (2d) 314; Eaker et al. v. Husbands, 263 Ky. 283, 92 S. W. (2d) 43. Not only did Jenkins fail to comply with the statutory requirements concerning the investment of trust funds, but he violated the minutes of the board of which he was secretary by paying out $1,200 almost sixty days before securing a mortgage and then instead of taking a first mortgage he took a second, and that was subject to certain tax liens. When Jenkins was paying out money from this trust fund to the president of the board, he

should have exercised the greatest care to comply with the minutes of the board and in paying out the board's money to his son-in-law, he should have made some effort to protect this loan by incorporating a precipitating clause in the mortgage and should have provided for insurance protection.

Appellant argues he is a policeman and not a financier and should be required to exercise only the judgment of a policeman. The answer to that argument is a policeman can comply with the minutes of a board as well as a financier and a man to be chief of police must have sufficient ability to enable him to serve as a member of the board of trustees of the pension fund. As secretary of the board, he must carry out its resolutions, otherwise he is inefficient or guilty of misconduct and should be removed or demoted to make room for some one who can and will obey orders. See Marcum v. Smith, 258 Ky. 404, 80 S. W. (2d) 38; Barney v. City of Ashland, 220 Ky. 657, 295 S. W. 998, for instances where the conduct of the officer though irregular was not sufficient to remove or demote him. In the instant case Jenkins' misconduct was covered by the statute, inasmuch as he did not exercise the degree of care usually exercised by prudent business men in making loans. Then, too, he wilfully failed to comply with the resolution passed by the board that a first mortgage should secure the $1,200 on Salmons' property. This constituted sufficient misconduct for his removal. 43 C. J. 661, Section 1092; Riggins v. City of Waco, 100 Tex. 32, 93 S. W. 426; In re Moran, 145 App. Div. 642, 130 N. Y. S. 432; State v. Zeigler, 199 Iowa 392, 202 N. W. 94.

The board of city commissioners recited in their judgment demoting Jenkins from chief of police to the position of policeman that it was lenient when it did not dismiss him entirely from the force for the manner in which he connived with Salmons in the handling of the pension fund. We are inclined to agree with the city commissioners that they were lenient with Jenkins.

Judgment affirmed.